IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NICHOLAS LESKOVISEK and<br>CHAD UNDERWOOD,<br><br>    Plaintiffs,<br><br>    v.<br><br>ILLINOIS DEPARTMENT OF<br>TRANSPORTATION and ILLINOIS<br>DEPARTMENT OF CENTRAL<br>MANAGEMENT SERVICES,<br><br>    Defendants. | COMPLAINT FOR EQUITABLE<br>AND OTHER RELIEF |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Nicholas Leskovisek and Chad Underwood, by their attorneys, bring this action against the Illinois Department of Transportation and the Illinois Department of Central Management Services, as follows:

**INTRODUCTION**

1.      Nicholas ("Nick") Leskovisek and Chad Underwood, two young men with autism just starting in the professional world, discovered that they had a special talent for data entry. Nick and Chad loved their jobs and, for over four years, worked hard and excelled in their data entry positions for with the Illinois Department of Transportation ("IDOT"). Despite their professional success, Nick and Chad were not given the pay, benefits and job protections afforded to their colleagues doing similar work. This was because Nick and Chad were hired through a program intended to provide training opportunities to people with disabilities. Nick and Chad desired full-time State employment but faced one insurmountable barrier—the State of

Illinois's testing and interviewing requirements, commonly referred to as the *Rutan* process. The *Rutan* process requires applicants to take a standard pre-employment test and, if they make it through the initial screening process, to participate in a structured interview. Nick and Chad knew that, despite their strong job skills, they could not meaningfully compete in this rigid process and asked for the State to modify these requirements as a reasonable accommodation under the Americans with Disabilities Act. The State did not provide the requested accommodations, thereby leaving the application process inaccessible to them. Nick and Chad continued in their job performing work comparable to their peers without commensurate pay, benefits, or job protections until IDOT terminated its training program and, with it, their jobs.

2. Nick and Chad bring this employment discrimination action to redress violations of their rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1343(a)(3).

4. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

5. Venue is proper under 28 U.S.C. § 1391(b). Defendants conduct business in this district and the events at issue occurred within this district.

6. All conditions precedent to suit have been met. Plaintiffs filed timely Charges of Discrimination with the EEOC.

7. The EEOC issued Plaintiffs Notices of Right to Sue (attached as Exhibit A), which were received by Plaintiffs' counsel on August 4, 2017.

**PARTIES**

8. Plaintiff Nicolas Leskovisek is a thirty-one year-old resident of Springfield, Illinois. Nick has autism and is unable to use speech to communicate.

9. Plaintiff Chad Underwood is a twenty-seven year-old resident of Springfield, Illinois. Chad has autism, and has an impaired ability to communicate and interact with others.

10. Defendant Illinois Department of Transportation or IDOT is an Illinois state agency responsible for planning, construction, operation, and maintenance of Illinois's transportation network, including roads, bridges, airports, public transit, rail freight, and rail passenger systems.

11. Defendant Illinois Department of Central Management Services ("CMS") is an Illinois state agency charged with providing a broad range of administrative programs and services to state agencies, including IDOT, and the public, including human resources and employee benefits; media and marketing; property and facilities management; procurement; and vehicle fleet management.

**FACTS**

12. From 2006 to 2015, IDOT administered the Students with Disabilities Program ("Program") in collaboration with School District 186 and United Cerebral Palsy Land of Lincoln. The Program was intended to provide job training and employment experience to individuals with disabilities, with the goal of enabling them to obtain permanent, competitive employment.

13. Nick and Chad entered the Program in 2008 and 2010, respectively, with the job title of Tech Trainee.

14. Both Nick and Chad demonstrated strong computer skills, especially with data entry. They were also hard-workers who enjoyed their jobs.

15. As a result, in early 2011, IDOT assigned Nick and Chad to work in its Traffic Safety Division, Statistical Coding Unit ("Unit").

16. One of the Unit's responsibilities was to input data on a timely basis from crash reports submitted by law enforcement agencies around the State.

17. Nick and Chad performed this data entry function, as did approximately 10-15 State employees.

18. Nick and Chad shared a job coach who observed them working, periodically checked their work for accuracy, and guided them with correcting any mistakes.

19. Nick and Chad successfully performed the essential functions of this position and were consistently top performers within the Unit.

20. For example, in March 2012, Nick was the third highest producer in the Unit. His supervisor stated that he "is truly producing at a competitive level with the 12 full-time employees within the Statistical Coding Unit."

21. Despite doing comparable work, Nick and Chad earned less than their co-workers and did not receive any employment benefits.

22. After successfully working as Tech Trainees for over three years in the Unit, Nick and Chad inquired into the possibility of working in full-time competitive employment.

23. Nick and Chad were advised that there were two significant hurdles to obtaining full-time State employment for people with significant disabilities—AFSCME bidding rights and the *Rutan* process.

24. Nick and Chad sought the assistance of Equip for Equality attorney Barry Lowy, who successfully negotiated a solution to the first barrier. AFSCME agreed to waive its bidding rights, as a reasonable accommodation, to enable Nick and Chad to secure a position doing work comparable to the work they performed as Tech Trainees. The most analogous position classification was Office Associate II, but, to minimize conflicts with the applicable collective bargaining agreement, AFSCME required that the job be classified as the lower-ranked Office Assistant, while still requiring the same data entry tasks.

25. Nick and Chad then sought to overcome the second barrier—the *Rutan* process.

26. The *Rutan* process is named for the U.S. Supreme Court case, *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), in which the Court held that hiring, promotion, transfer, and recall may not be based on party affiliation or support and, instead, must be based on merits and qualifications of candidates.

27. To protect against this *Rutan*-prohibited political hiring, the State created a structured application and interview process for applicants for most State positions.

28. CMS is the state agency that administers the *Rutan* process.

29. The goal of the *Rutan* process is to screen the qualifications of an applicant for State employment to determine if the applicant has the ability to perform the job.

30. Under the process, an applicant for State employment must undergo testing for a particular job classification, regardless of whether there is a position currently vacant or being advertised in that classification. If a position becomes available and the applicant scored a sufficiently high grade on the test, the applicant undergoes a structured interview.

31. Due to the nature of their disabilities, it was clear that Nick and Chad would not, without reasonable accommodations, be able to pass this test or participate in an interview, despite having already demonstrated their ability to perform the job.

32. In an effort to remove this barrier, on June 11, 2014, Mr. Lowy contacted IDOT Chief Counsel Michael Forti and requested that the State provide reasonable accommodations to Nick and Chad in the testing and interviewing process.

33. Mr. Lowy explained that, due to autism, neither Nick nor Chad was capable of passing the CMS entrance test and interviewing for the position without accommodation.

34. Mr. Lowy further explained that the testing and interview requirements, as applied to Nick and Chad, were not job-related or consistent with business necessity, as both men had already demonstrated their ability to perform the essential functions of the position, and had done so for a period beyond the probationary employee period.

35. Mr. Lowy also noted his prior agreement with AFSCME, to show that the union would not pose a separate barrier to employment.

36. In a letter to Mr. Lowy dated July 9, 2014, Mr. Forti concurred that "Chad and Nick are satisfactorily performing the essential functions of their assigned duties."

37. Mr. Forti also wrote that IDOT "does not object to a waiver of the testing and interviewing requirements" but, because CMS administers this process, CMS, not IDOT, must grant the accommodation request.

38. On August 28, 2014, per Mr. Forti's letter, Mr. Lowy contacted CMS to request reasonable accommodations for Nick and Chad to the State's pre-employment testing and interviewing requirements.

39. On October 17, 2014, CMS attorney Jeff Shuck responded and stated that CMS was in the process of researching the feasibility of bypassing the testing and interviewing procedures generally required for job candidates for *Rutan*-covered, Personnel Code-covered vacancies. Mr. Shuck advised that he would reach out again in the future.

40. By early December, no one from CMS had yet responded to the reasonable accommodation requests. Mr. Lowy left Mr. Shuck a phone message expressing concern about the lack of response. Mr. Shuck did not return Mr. Lowy's call.

41. On December 10, 2014, Mr. Lowy contacted Mr. Shuck by email to ask for a firm date by which CMS would provide a response to Plaintiffs' requests for reasonable accommodations.

42. On December 19, 2014, Mr. Shuck responded by email and said that CMS did not have all of the information that it needed to evaluate Nick and Chad's request. He asked counsel for Nick and Chad for additional information about their current duties, current reasonable accommodations, job coach, and evaluations.

43. That very day, Mr. Lowy provided job evaluations, performance studies, and information about the job coach's role.

44. After December 19, 2014, neither CMS nor IDOT contacted Nick, Chad, or Mr. Lowy to seek additional information, discuss the outstanding requests, or grant (or even deny) any aspect of the requested accommodations.

45. On June 15, 2015, Nick and Chad each filed a charge of discrimination with the EEOC regarding CMS's and IDOT's failure to provide with reasonable accommodations and failure to engage in the interactive process.

46. On July 30, 2015, six weeks after they filed a charge of discrimination with the EEOC, Nick and Chad were informed that they would be moved from their workspace in an open area with nondisabled employees to a small, enclosed office isolated from everyone else. No reason was given for this move. Their job coach contested the move and explained that, due to their autism, enclosure in a small office would adversely affect their health and safety.

47. Only after this intervention did IDOT agree not to move Nick and Chad's workspace.

48. On September 2, 2015, IDOT sent a letter to its Program partners notifying them that it was terminating the Students with Disabilities Program effective December 31, 2015.

49. Even as their termination date approached, Plaintiffs continued to express their desire to remain employed with IDOT.

50. On December 31, 2015, Nick and Chad were fired from their positions as Tech Trainees with IDOT.

51. On information and belief, IDOT has had vacancies for comparable data entry positions between August 28, 2014 and the present day.

52. On information and belief, IDOT has hired individuals to fill such positions and/or hired temporary or seasonal employees to complete the Unit's data entry.

**COUNT I: VIOLATION OF TITLE I OF THE ADA**
**FAILURE TO ACCOMMODATE**

53. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

54. The ADA's definition of discrimination includes the failure to make reasonable accommodations to enable a qualified applicant with a disability to be considered for the desired position. 42 U.S.C. § 12112(b)(5); 29 C.F.R. § 1630.9; 29 C.F.R. § 1630.2(o).

55. Plaintiff Nicholas Leskovisek is a person with a disability under the ADA. He has autism, which causes substantial limitations in various major life activities, including the ability to communicate and interact with others. 29 C.F.R. § 1630.2(j)(3)(iii)("it should easily be concluded that … autism substantially limits brain function").

56. Plaintiff Chad Underwood is a person with a disability under the ADA. He has autism, which causes substantial limitations in various major life activities, including the ability to communicate and interact with others. 29 C.F.R. § 1630.2(j)(3)(iii).

57. Defendant IDOT is a covered entity under the ADA, as it is an employer. 29 C.F.R. § 1630.2(b).

58. Defendant CMS is a covered entity under the ADA, as it is an employer and/or an employment agency with control over IDOT's personnel and accommodation decisions. 29 C.F.R. § 1630.2(b).

59. Plaintiffs are qualified applicants for the position of Office Assistant, Office Associate, Office Associate II, or any other data entry position within IDOT.

60. Plaintiffs requested reasonable accommodations to the State's required pre-employment testing and interviewing requirements.

61. Plaintiffs' requested accommodations were reasonable because, *inter alia*, Plaintiffs had already demonstrated their ability to perform the essential functions of at least some of IDOT's data entry positions.

62. Defendants failed to engage in the interactive process with Plaintiffs as Defendants never discussed alternatives to the *Rutan* testing and interviewing requirements and never responded with an answer to Plaintiffs' requests.

63. Defendants discriminated against Plaintiffs in violation of the ADA by:

      a.      failing to grant Plaintiffs' requested reasonable accommodations; and

      b.      failing to engage in the interactive process with Plaintiffs.

64. As a result of Defendants' unlawful actions, Plaintiffs were unable to access the State's testing and interview process, prerequisites to State employment.

65. As a result of Defendants' unlawful actions, Plaintiffs suffered injuries including but not limited to lost wages and emotional distress.

## COUNT II: VIOLATION OF TITLE I OF THE ADA
## FAILURE TO HIRE

66. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

67. The ADA prohibits discrimination by an employer against a qualified individual with a disability in the terms and conditions of employment, including hiring. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4(a)(ii).

68. Plaintiffs are qualified for the position of Office Assistant, Office Associate, Office Associate II, or any other data entry position within IDOT, as they worked for IDOT successfully in comparable positions performing the same essential functions for over three years.

69. On information and belief, IDOT has had vacancies for comparable data entry positions between August 28, 2014 and the present day and has hired individuals to fill such positions.

70. Plaintiffs expressed their desire to be considered for comparable positions doing data entry in the IDOT.

71. Plaintiffs recognized that they needed reasonable accommodations to participate in the State's testing and interview process, so requested reasonable accommodations to participate in that process.

72. Due to Defendants' failure to grant or to engage in an interactive process regarding Plaintiffs' requested accommodation in the testing and interview process, Plaintiffs lost the ability to compete for the position and were never considered for full-time employment.

73. Defendants discriminated against Plaintiffs in violation of the ADA by:

   a. failing to consider them for full-time employment; and

   b. failing to hire Plaintiffs for the Office Assistant/Associate position or any data entry position.

74. As a result of Defendants' unlawful actions, Plaintiffs suffered injuries including but not limited to lost wages and emotional distress.

### COUNT III: VIOLATION OF TITLE I OF THE ADA
### QUALIFICATION STANDARDS THAT SCREEN OUT PEOPLE WITH DISABILITIES

75. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

76. The ADA prohibits the use of "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability… unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6); 29 C.F.R. § 1630.10.

77. Nick and Chad, like applicants for most State employment positions, were required to undergo a testing and interview process, also known as the *Rutan* process, to be considered for State employment.

78. The State's testing and interviewing requirements constitute eligibility criteria within the meaning of the ADA.

79. The inflexible nature of the *Rutan* process screens out Nick and Chad, as well as other individuals who have substantial limitations in their ability to communicate and interact with others.

80. The *Rutan* process is neither job-related nor consistent with business necessity as applied to Nick and Chad.

81. The stated purpose of the *Rutan* process is to identify qualified applicants. Nick and Chad have a demonstrated work history that could have been used as an alternative screening mechanism.

82. In addition, there are other methods to determine Nick and Chad's qualifications without requiring the standard *Rutan* testing and interviewing requirements.

83. Defendants never responded to Plaintiffs to suggest or discuss alternatives to the standard *Rutan* testing and interviewing requirements.

84. Defendants discriminated against Plaintiffs in violation of the ADA by implementing eligibility criteria that screened out applicants with disabilities.

85. As a result of Defendants' unlawful actions, Plaintiffs suffered injuries including but not limited to lost wages and emotional distress.

## COUNT IV: VIOLATION OF TITLE I OF THE ADA

## PARTICIPATING IN AN ARRANGEMENT THAT HAS THE EFFECT OF DISCRIMINATING AGAINST A QUALIFIED APPLICANT

86. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

87. The ADA prohibits participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant with a disability to the discrimination prohibited by this subchapter. 42 U.S.C. § 12112(b)(2); 29 C.F.R. § 1630.6.

88. IDOT participated in an administrative arrangement whereby IDOT controlled Office Assistant/Associate position openings and functions but could not hire applicants for those positions without the applicants first undergoing the CMS-controlled *Rutan* process, which screened out Plaintiffs because of their disabilities.

89. Defendants' administrative arrangement had the effect of discriminating against Plaintiffs.

90. As a result of Defendants' unlawful actions, Plaintiffs suffered injuries including but not limited to lost wages and emotional distress.

## COUNT V: VIOLATION OF TITLE V OF THE ADA
## RETALIATION

91. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

92. The ADA prohibits employers from retaliating against applicants or employees for opposing any prohibited act. 42 U.S.C. § 12203(a).

93. Plaintiffs engaged in protected activity when they requested reasonable accommodations to the pre-employment process in June 2014 and August 2014.

94. Plaintiffs engaged in protected activity when they filed a charge of employment discrimination with the EEOC in June 2015.

95. Just six weeks after Plaintiffs filed their charge of discrimination, IDOT attempted to transfer them from the open workspace integrated with their colleagues where they had worked for years without incident to a small, isolated workspace separate from all of their colleagues. IDOT returned them to their original workspace only after Plaintiffs' job coach intervened and challenged this new placement.

96. Less than three months after Plaintiffs filed their charge of discrimination, IDOT notified its Program partners that it was terminating the Students with Disabilities Program effective December 31, 2015.

97. On December 31, 2015, Nick and Chad were fired from their positions as Tech Trainees, as IDOT terminated the Students with Disabilities Program.

98. Even after the termination of the Students with Disabilities Program, IDOT failed to hire Nick and Chad or otherwise permit them to continue working in another employment capacity.

99. Defendants retaliated against Plaintiffs in violation of the ADA by:

    a. attempting to alter the terms and conditions of their employment by placing them in an isolated workspace;

    b. failing to accommodate Plaintiffs and engage in the interactive process;

    c. terminating Plaintiffs' employment with IDOT; and

    d. failing to hire Plaintiffs for employment with IDOT.

100.	As a result of Defendants' unlawful actions, Plaintiffs suffered injuries including but not limited to lost wages and emotional distress.

WHEREFORE, Plaintiffs Chad Underwood and Nicholas Leskovisek respectfully request that this Honorable Court:

  A. Declare Defendants' actions to violate Titles I and V of the ADA;

  B. Order Defendants to create and adhere to a reasonable accommodation policy and protocol to ensure applicants with disabilities receive accommodations to the *Rutan* process;

  C. Order Defendants to hire Plaintiffs with retroactive salary, promotions, and seniority; or, in the alternative award Plaintiffs the value of compensation and benefits they will continue to lose in the future as a result of Defendants' unlawful conduct;

  D. Award back pay with interest;

  E. Award compensatory damages;

  F. Award reasonable attorneys' fees and costs; and

  G. Grant such additional relief as the Court deems just and proper.

PLAINTIFFS DEMAND TRIAL BY JURY.

Dated: October 31, 2017

RESPECTFULLY SUBMITTED,

/s/ *Rachel M. Weisberg*
One of the Attorneys for Plaintiffs


Rachel M. Weisberg, Lead Counsel
Bebe Novich
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, Illinois 60602
(312) 895-7319
(312) 341-0022
RachelW@equipforequality.org
Bebe@equipforequality.org