## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **NICHOLAS LESKOVISEK, by his next friend, LORI STANLEY, and CHAD UNDERWOOD, by this next friend, KIM UNDERWOOD,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | No. 3:17-CV-03251 |
| **ILLINOIS DEPARTMENT OF TRANSPORTATION and ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiffs Nicholas Leskovisek, by his next friend, Lori Stanley, and Chad Underwood, by his next friend, Kim Underwood, filed a five-count First Amended Complaint alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (ADA). This cause is now before the Court on the Motion to Dismiss (d/e 17) filed by Defendants Illinois Department of Transportation (IDOT) and Illinois Department of Central

Management Services (CMS).[1]  For the reasons that follow, Count V is dismissed without prejudice as to CMS with leave to replead. The Motion is denied in all other respects.

## I. JURISDICTION

This Court has subject matter jurisdiction because Plaintiffs' claims are based on the ADA, a federal law.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  Venue is proper because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.  28 U.S.C. § 1391(b)(2).

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiffs' First Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

---

[1] Illinois has legislatively waived its Eleventh Amendment immunity for claims for damages under the ADA.  See 745 ILCS 5/1.5(d); Painter v. Ill. Dep't of Transp., No. 16-3187, 2017 WL 6032504, at *2 (7th Cir. 2017) (unpublished disposition).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal of a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When considering a Rule 12(b)(1) motion to dismiss for lack of standing, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff.  Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).  However, "[i]f a defendant raises a factual challenge to standing, the plaintiff bears the burden of proving standing by a preponderance of the evidence." Laurens v. Volvo Cars of N. Am., LLC, 868 F.3d 622, 625 (7th Cir. 2017).  Defendants only make a facial challenge to subject matter jurisdiction here.

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cnty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendants fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to

the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor. <u>Id.</u> However, the complaint must set forth facts that plausibly demonstrate a claim for relief. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. <u>Id.</u>

### III. FACTS ALLEGED IN THE COMPLAINT

The complaint contains the following allegations, which the Court accepts as true for purposes of the motion to dismiss. <u>Tamayo</u>, 526 F.3d at 1081.

Leskovisek is a 31-year-old man with autism who is unable to use speech to communicate. Underwood is a 27-year-old man with autism who has an impaired ability to communicate and interact with others.

Leskovisek and Underwood entered IDOT's Students with Disabilities Program in 2008 and 2010, respectively, with the job

title of Tech Trainee.  The Students with Disabilities Program was a program administered by IDOT in collaboration with School District 186 and United Cerebral Palsy Land of Lincoln.  The Program was intended to provide job training and employment experience to individuals with disabilities, with the goal of enabling them to obtain permanent, competitive employment.

In early 2011, IDOT assigned Plaintiffs to work in its Traffic Safety Division, Statistical Coding Unit (Unit).  Plaintiffs successfully performed the essential functions of this position and were consistently top performers within the Unit.  However, as participants in the Program, Plaintiffs earned less than their co-workers and did not receive any employment benefits.

After working as Tech Trainees for over three years in the Unit, Plaintiffs inquired about working in full-time competitive employment.  Two barriers stood in their way: (1) American Federation of State, County, and Municipal Employees (AFSCME) trade union bidding rights and (2) the State of Illinois' hiring process for non-exempt positions, which Plaintiffs refer to as the "Rutan process."  See Rutan v. Republican Party of Ill., 497 U.S. 62 (1990) (holding that hiring, promotion, transfer, and recall may not

be based on party affiliation or support but must be based on the merits and qualifications of candidates). Equip for Equality attorney, Barry Lowy, successfully negotiated a solution with AFSCME to the first barrier.

Plaintiffs allege that they were not as successful on the second barrier. According to Plaintiffs, the State of Illinois created a structured application and interview process for applicants for most State positions. Defendant CMS is the State agency that administers the process. Under the process, applicants for State employment must undergo testing for particular job classifications, regardless of whether there is a position currently vacant or being advertised. If a position becomes available, and the applicant scores a sufficiently high grade on the test, the applicant undergoes a structured interview. Plaintiffs allege that, due to the nature of their disabilities, they could not pass the test or participate in an interview without a reasonable accommodation, despite having already demonstrated their ability to perform the job.

In June 2014, Lowy contacted IDOT Chief Counsel, Michael Forti, to request a reasonable accommodation. Lowy explained

that Plaintiffs were not capable of passing the CMS entrance test or interviewing for the position without an accommodation. Lowy further explained that the testing and interview requirements, as applied to Plaintiffs, were not job-related or consistent with business necessity, as both men had demonstrated their ability to perform the essential functions of the positions.

In a July 2014 response, Chief Counsel Forti responded that Plaintiffs were satisfactorily performing the essential functions of their assigned duties. Chief Counsel Forti also indicated that IDOT "'does not object to a waiver of the testing and interviewing requirements' but, because CMS administers this process, CMS, not IDOT, must grant the accommodation request." First Am. Compl. ¶ 37 (d/e 14).

On August 28, 2014, Lowy contacted CMS to request a reasonable accommodation. On October 17, 2014, CMS attorney Jeff Shuck responded that CMS was in the process of researching the feasibility of bypassing the testing and interviewing procedures required for <u>Rutan</u>-covered, Personnel Code-covered vacancies. In early December, after hearing nothing further, Lowy left a phone message for Shuck. On December 10, 2014, Lowy contacted

Shuck by email asking for a firm date by which CMS would provide a response to Plaintiffs' requests for reasonable accommodations. On December 19, 2014, Shuck responded that he needed additional information. Lowy provided the requested information that same day. After December 19, 2014, neither CMS nor IDOT contacted Plaintiffs or Lowy to seek additional information, discuss the request, or grant or deny the requested accommodation.

On June 15, 2015, Plaintiffs each filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) regarding CMS's and IDOT's failure to provide a reasonable accommodation and engage in the interactive process. On July 30, 2015, Plaintiffs were informed that they would be moved to a new workspace isolated from everyone else. After their job coach contested the move, IDOT agreed not to move Plaintiffs.

On September 2, 2015, IDOT sent a letter to its Program partners notifying them that IDOT was terminating the Program effective December 31, 2015. Plaintiffs continued to express their desire to remain employed by IDOT. Plaintiffs allege, on information and belief, that IDOT had vacancies for comparable

data entry positons between August 28, 2014 and the present day. Plaintiffs also allege that, on information and belief, IDOT hired individuals to fill such positions and/or hired temporary or seasonal employees to complete the Unit's data entry.

On October 31, 2017, Plaintiffs filed a Complaint against IDOT and CMS. On January 18, 2018, Plaintiffs filed a First Amended Complaint.

Plaintiffs bring four claims alleging a violation of Title I of the ADA: (1) failure to provide a reasonable accommodation to the State's required pre-employment testing and interviewing requirements and failure to engage in the interactive process (Count I); (2) failure to hire Plaintiffs (Count II); (3) maintaining qualification standards that screen out individuals with disabilities (Count III); and (4) participating in an arrangement that has the effect of discriminating against a qualified applicant (Count IV). Plaintiffs also bring a claim for retaliation under Title V of the ADA (Count V).

Plaintiffs request that the Court declare that Defendants' actions violate Titles I and V of the ADA and order Defendants to create and adhere to a reasonable accommodation policy and

protocol to ensure applicants with disabilities receive accommodation to the hiring process. Plaintiffs also request that the Court order Defendants to hire Plaintiffs with retroactive salary, promotions, and seniority or, in the alternative, award Plaintiffs the value of compensation and benefits they will continue to lose in the future as a result of Defendants' unlawful conduct. Finally, Plaintiffs seek backpay with interest, compensatory damages, and reasonable attorney's fees and costs.

## IV. ANALYSIS

Defendants move to dismiss Plaintiffs First Amended Complaint on the grounds that Plaintiffs lack standing and for failure to state a claim.

## A.    Plaintiffs Have Standing to Bring Their Claims

Defendants first argue that Plaintiffs' complaint should be dismissed for lack of jurisdiction because they do not have standing to bring their claims. Specifically, Defendants assert that Plaintiffs never applied for permanent State employment and, therefore, did not suffer an injury that can be redressed. Defendants also assert that Plaintiffs cannot claim that they face a

real and immediate threat of future violations of their rights that would warrant prospective injunctive relief.

To have standing, an individual must meet three requirements: (1) the individual must have suffered an injury in fact that is both (a) concrete and particularized and (b) actual or imminent; (2) the injury must be fairly traceable to the challenged action; and (3) it must be likely that a favorable decision will redress the injury. Sierra Club v. Franklin Cnty. Power of Ill., LLC, 546 F.3d 918, 925 (7th Cir. 2008); see also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Therefore, to survive Defendants' motion to dismiss for lack of standing, Plaintiffs' complaint must contain sufficient factual allegations on each of these requirements. See Berger v. Nat'l Collegiate Athletic Ass'n, 843 F.3d 285, 289 (7th Cir. 2016).

Here, Plaintiffs have sufficiently alleged standing. Plaintiffs allege that they suffered an injury because they were unable to access the State's testing and interview process, lost their ability to compete for a full-time position, lost wages, and suffered emotional distress. Plaintiffs' injuries are fairly traceable to Defendants' alleged actions of not reasonably accommodating Plaintiffs, not

engaging in the interactive process, not hiring Plaintiffs, and retaliating against Plaintiffs. Finally, it is likely that the alleged injuries can be redressed by the Court.

Defendants argue that Plaintiffs lack standing because they did not apply for any vacant positions. Generally, a person who does not apply for a position or request a benefit lacks standing to challenge the procedures that govern applying for or requesting that benefit. <u>Baer-Stefanov v. White</u>, 773 F. Supp.2d 755, 759 (N.D. Ill. 2011) (citing cases). However, such person nonetheless has standing if he can demonstrate that applying for or requesting that benefit would have been futile. <u>See Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 365 (1977) (concluding that the failure to apply for a job did not "foreclose [a person's] entitlement to seniority relief under Title VII" where doing so would have been futile).

In <u>Teamsters</u>, the United States Supreme Court recognized, in a Title VII case, that "[a] consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection." <u>Id.</u> at 365 (noting that potential

applicants need not "subject themselves to the humiliation of explicit and certain rejection"). To merit relief under the futility doctrine, the nonapplicant plaintiff must meet "the not always easy burden of providing that he would have applied for the job had it not been for [the employer's discriminatory] practices." Id. at 368. Courts have extended the futility doctrine to ADA cases, and Congress expressed its intent that the futility doctrine identified in Teamsters apply to the ADA. See Davoll v. Webb, 194 F.3d 1116, 1132 (10th Cir. 1999) (finding that the futility doctrine applied to ADA cases); H.Rep.No. 101-485(II) at 82-83 (1990) (noting the Teamsters case and stating that "[t]he Committee intends for this doctrine to apply to this title").

In this case, Plaintiffs have plausibly alleged that they were deterred from applying for a position due to the consistently enforced discriminatory policy of requiring all individuals to undergo the testing and interview requirements. In fact, Plaintiffs allege that applicants must undergo testing for a particular job classification even if there is no position currently vacant or being advertised. Plaintiffs further allege that, due to their disabilities, they could not pass that test or participate in the interview without

a reasonable accommodation. Plaintiffs allege that they attempted, without success, to obtain reasonable accommodations for the testing and interview requirements. Therefore, Plaintiffs have sufficiently alleged that it would have been futile to apply for a vacant position where, due to their disabilities and the lack of a reasonable accommodation, they could not complete the threshold testing and interview requirements. See E.E.OC. v. Creative Networks, L.L.C., 912 F. Supp. 2d 828 (D. Ariz. 2012) ("[A] claimant is not necessarily required to complete every step of the application process—or even apply—when discriminatory hiring procedures deter her from doing so.").

Defendants also argue that Plaintiffs do not have standing to seek injunctive relief. "[T[o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." Scherr v. Marriott Int'l, Inc., 703 F. 3d 1069, 1074 (7th Cir. 2013).

Here, construing the complaint in the light most favorable to Plaintiffs, Plaintiffs allege that they have expressed their desire to be considered for comparable positions performing data entry at IDOT (First Am. Compl. ¶ 70) but are unable to seek such

positions because they need—but have been denied—a reasonable accommodation to participate in the State's testing and interview process.  Id. ¶¶ 31, 64, 71.  Therefore, Plaintiffs have alleged that they still want to be considered for employment with IDOT but are unable to seek such employment due to Defendants' alleged discrimination.  As such, Plaintiffs have sufficiently alleged a real and immediate threat of future violations to their rights, and have alleged that they have standing to seek injunctive relief.

**B.     Defendants' Motion to Dismiss for Failure to State a Claim is Granted in Part and Denied in Part**

Defendants also argue that the First Amended Complaint fails to state a claim.

Under the ADA, a plaintiff can bring a claim of discrimination alleging disparate treatment, disparate impact, or a failure to accommodate.  See Valencia v. City of Springfield, Ill., 883 F.3d 959, 967 (7th Cir. 2018); Raytheon Co. v. Hernandez, 540 U.S. 44, 53 (2002) (recognizing that both disparate treatment and disparate impact claims are cognizable under the ADA).  A plaintiff can also bring a claim for retaliation under the ADA.  42 U.S.C. § 12203(a);

Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522, 657 F.3d 595, 601 (7th Cir. 2011).

Plaintiffs bring their discrimination claims in four counts. Plaintiffs allege that Defendants failed to provide a reasonable accommodation, failed to hire them, that the qualification standards effected a disparate impact, and that the contractual arrangement between IDOT and CMS had the effect of discriminating against Plaintiffs. Plaintiffs also bring a retaliation claim.

Defendants first argue that Plaintiffs cannot state a claim because they did not apply for any positions. For the reasons stated above, the Court finds that Plaintiffs have plausibly alleged that applying for a position would have been futile in light of the testing and interview requirements that Plaintiffs could not perform absent a reasonable accommodation, which Defendants allegedly refused to provide. The Court will proceed to address Defendants' remaining arguments on each count.

## 1.    Count I States a Claim

In Count I, Plaintiffs allege that Defendants discriminated against them by failing to make a reasonable accommodation to

the State's required pre-employment testing and interviewing requirements.   The ADA defines discrimination to include failing to make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant unless the accommodation would impose an undue hardship.  42 U.S.C. § 12112(b)(5)(A).  To state a claim for a failure to make a reasonable accommodation, Plaintiffs must allege that: (1) they are disabled; (2) they are otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) Defendants failed to make a reasonable accommodation.  <u>See</u> <u>Stevens v. Ill. Dep't of Transp.</u>, 210 F.3d 732, 736 (7th Cir. 2000).

Here, Plaintiffs allege that they have autism, which causes substantial limitations on various major life activities including communication and interacting with others.  Plaintiffs further allege that they were qualified for at least some of IDOT's data entry positions, as evidenced by their successful performance in their jobs as Tech Trainees.  Plaintiffs requested a reasonable accommodation to the State's pre-employment testing and interviewing requirements.  Defendants failed to engage in the

interactive process with Plaintiffs because Defendants never
discussed alternatives to the State's testing and interviewing
requirements and never responded with an answer to Plaintiffs'
requests for an accommodation to those requirements.

Defendants assert that Count I fails to state a claim because
the complaint alleges that Defendants did, in fact, engage in the
interactive process.  The Court disagrees.

Plaintiffs allege that IDOT did not object to a waiver of the
testing and interviewing requirements but that CMS, not IDOT,
must grant the accommodation request.  Am. Compl. ¶ 37.
Plaintiffs allege that they contacted CMS who, other than asking
for additional information that was immediately provided, did not
make any effort to engage in an interactive process or otherwise
discuss, grant, or deny the request for an accommodation.

While the failure to engage in the interactive process is not an
independent basis for liability, it is actionable if it prevents the
identification of an appropriate accommodation of a qualified
individual.  <u>Spurling v. C&M Fine Pack, Inc.</u>, 739 F.3d 1055, 1062
(7th Cir. 2014).  Construing the complaint in the light most
favorable to Plaintiffs and drawing all reasonable inferences in

their favor, the Court finds that Plaintiffs have adequately alleged that Defendants' actions prevented the identification of an appropriate accommodation.  See Clemens v. Speer, No. 16-cv-467-wmc, 2017 WL 2684101, at *8 (W.D. Wis. June 21, 2017) (finding it "plausible to infer that the single phone call . . . did not amount to an interactive process and, therefore, that defendant failed to uncover a reasonable accommodation that would have allowed plaintiff to return to work"); Dusik v. Lutheran Child & Family Servs. of Ill., No. 16 CV 10812, 2017 WL 1437045, at *3 (N.D. Ill. Apr. 24, 2017) (finding it "plausible to infer that [the defendant's] few phone calls with [plaintiff] did not amount to an interactive process and that[,] as a result, [the defendant] failed to uncover a reasonable accommodation").

Defendants also argue that IDOT cannot be liable for failing to accommodate Plaintiffs because approval was beyond its control.  The Court will not decide this issue on a motion to dismiss.  Plaintiffs have plausibly alleged that CMS and IDOT failed to provide a reasonable accommodation.  Plaintiff alleges that CMS is the state agency that administers the State's hiring process that Plaintiffs had to undergo.  An entity cannot do

through a contractual relationship that which it cannot do directly.

See 42 U.S.C. § 12112(b)(2) (defining discrimination to include

"[p]articipating in a contractual or other arrangement or

relationship that has the effect of subjecting a covered entity's

qualified applicant or employee with a disability to the

discrimination prohibited by this subchapter").

Defendants next argue that the accommodation Plaintiffs

sought—complete waiver of the testing and interview process—was

not an appropriate accommodation.  However, an employer cannot

"reject an employee's requests for an accommodation without

explaining why the requests have been rejected or offering

alternatives."  E.E.O.C. v. Sears, Roebuck & Co., 417 F.3d 789,

806 (7th Cir. 2005) (noting that the employer was not obligated to

provide the accommodation the employee requested but "could not

simply reject the request and take no further action").

Defendants also argue that Plaintiffs do not allege why they

could not complete the hiring requirements.  Defendants do not

cite any support for requiring such allegations at the pleading

stage.  Moreover, Plaintiffs do allege that they could not pass the

test or participate in an interview because of their inability to use

speech to communicate (Leskovisek) and impaired ability to communicate and interact with others (Underwood). First Am. Compl. ¶¶ 8, 9, 31, 33. And, as the Court noted above, Plaintiffs alleged facts supporting each of the elements of a failure to accommodate claim. Defendants' Motion to Dismiss Count I is denied.

### 2. **Count II States a Claim**

In Count II, Plaintiffs allege that Defendants violated the ADA by failing to hire them. To state a claim for a failure to hire, Plaintiffs must allege that they were not hired for a job because of their disability. Dixon v. CMS, No. 14 C 4986, 2015 WL 6701771, at * 2 (N.D. Ill. Nov. 3, 2015).

Defendants seek to dismiss Count II, arguing that Plaintiffs did not allege that any vacancies existed. Defendants also argue that Defendants cannot fail to hire or discriminate against someone who never applied for the job.

However, Plaintiffs do allege, on information and belief, that vacancies existed. See First Am. Compl. ¶¶ 51-52, 69. In addition, as discussed above, Plaintiffs have plausibly alleged that it would have been futile to apply for a position due to Defendants'

discriminatory practices.  Therefore, Defendants' Motion to
Dismiss Count II is denied.

### 3.   **Count III States a Claim**

In Count III, Plaintiffs allege that Defendants violated the ADA
by using qualification standards that screen out persons with
disabilities.  Section 12112(b)(6) of the ADA provides, in relevant
part, that discrimination under the ADA includes:

> using qualification standards, employment tests[,] or
> other selection criteria that screen out or tend to screen
> out an individual with a disability or a class of
> individuals with disabilities unless the standard, test or
> other selection criteria, as used by the covered entity, is
> shown to be job-related for the position in question and
> is consistent with business necessity.

42 U.S.C. § 12112(b)(6).

Defendants argue that Count III is a disparate impact claim
and that Count III fails to state a claim because Plaintiffs fail to
allege any facts showing that the Defendants' testing process
caused a relevant and statistically significant disparity between
disabled and non-disabled applicants.

Plaintiffs argue that the legal framework for establishing
disparate impact under the ADA is different from other anti-
discrimination laws because § 12112(b)(6) extends to qualification

standards that screen out an individual or a class of individuals with disabilities, whereas the other anti-discrimination laws do not extend protections to standards that screen out individuals only. Pls. Resp. at 17 (citing Williams v. ABM Parking Servs., Inc., No. 1:16cv1259, 2017 WL 4999562, at *6 (E.D. Va. Oct. 31, 2017) and EEOC Technical Assistance Manual, Title I of the ADA, § I-4.3.2 (1992)). Plaintiffs further assert that plaintiffs regularly bring claims under § 12112(b)(6) without pleading or proving a statistical disparity. Pls. Resp. at 18 (citing cases). Finally, Plaintiffs argue that, even if statistics are ultimately required, Plaintiffs should be given the benefit of the discovery process.

Defendants cite to Roberts v. City of Chi., 817 F.3d 561, 566 (7th Cir. 2016) to support their position that Plaintiffs must allege facts showing that the testing process caused a relevant and statistically significant disparity between disabled and non-disabled applicants. In Roberts, the Seventh Circuit affirmed the dismissal for failure to state a claim where the plaintiffs only alleged that the defendant discriminated against them individually and not disabled applicants generally. The Seventh Circuit further found that the ADA plaintiffs failed to allege any facts tending to

show that the defendant's employment practice "'caused a relevant and statistically significant disparity between' disabled and non-disabled applicants." Id. (quoting Adams v. City of Indianapolis, 742 F.3d 720, 733 (7th Cir. 2014) (involving complex Title VII discrimination claims)).

Although Roberts is binding on this Court, the Court will allow Count III to proceed with leave for Defendants to raise the issue again after discovery. First, § 12112(b)(6) specifically defines discrimination to include qualifications standards that screen out an individual with a disability, not just a class of individuals with a disability. Second, Plaintiffs have alleged sufficient facts to permit them to proceed to discovery to obtain evidence that Defendants' testing process caused a relevant and statistically significant disparity between disabled and non-disabled applicants. Therefore, the Court will not dismiss Count III at this time.

### 4.   **Count IV States a Claim**

The ADA defines discrimination against a qualified individual on the basis of a disability to include:

> participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability

to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, or organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs).

42 U.S.C. § 12112(b((2). Section 12112(b)(2) was "intended to prohibit an entity from doing through a contractual relationship what it cannot do directly." Piquard v. City of E. Peoria, 887 F. Supp. 1106, 1124 (C.D. Ill. 1995) (noting that "[a]n entity may not contract with organizations that provide employee fringe benefits if the relationship subjects the disabled employee" to discrimination prohibited by the ADA).

In Count IV, Plaintiffs allege that IDOT participated in an administrative arrangement where IDOT controlled the Office Assistant/Associate position openings and functions but could not hire applicants without those applicants undergoing the CMS-controlled hiring process, which screened out Plaintiffs because of their disabilities. Plaintiffs assert that this administrative arrangement had the effect of discriminating against Plaintiffs.

Defendants move to dismiss Count IV on the ground that the facts alleged in this count are merely part of Plaintiffs' overall

failure-to-hire claim and Plaintiffs do not allege anything new to support this count as a separate basis of liability.[2]   The Court will not dismiss Count IV at this time.   Rule 8 of the Rules of Civil Procedure provides that a party may set out two more statements of a claim in a single count or separate counts and "may state as many separate claims . . . as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(2), (d)(3).   Therefore, Defendants' Motion to Dismiss Count IV is denied.

### 5.   Count V States a Claim as to Defendant IDOT

In Count V, Plaintiffs allege that Defendants retaliated against them for requesting a reasonable accommodation and for filing a charge of discrimination with the EEOC.   Plaintiffs further allege that Defendants retaliated against them by attempting to alter the terms and conditions of their employment by placing them in an isolated workspace, failing to accommodate them and engage in the interactive process, terminating their employment with IDOT, and failing to hire Plaintiffs for employment with IDOT.

---

[2] Defendants also argue that Plaintiffs never applied for the positions and no vacancies existed, so Plaintiffs were never subjected to any arrangement between IDOT and CMS.  The Court has already addressed the failure-to-apply issue and found that Plaintiffs have alleged that it would have been futile to apply.  In addition, Plaintiffs allege that vacancies existed.

The ADA prohibits employers from retaliating against applicants or employees for opposing any act or practice made unlawful by the ADA or making a charge under the ADA. 42 U.S.C. § 12203(a). To state a claim for retaliation, Plaintiffs must allege that Defendants took an adverse employment action because Plaintiffs engaged in protected activity. <u>Carlson v. CSX Transp., Inc.</u>, 758 F.3d 819, 828 (7th Cir. 2014); <u>see</u> <u>also</u> <u>Mounts v United Parcel Serv. of Am., Inc.</u>, No. 09 C 1637, 2009 WL 2778004, at *4 (N.D. Ill. Aug. 31, 2009) (noting that "a plaintiff must plead facts sufficient to allow the court to draw a reasonable inference that the defendant is liable for the conduct alleged").

Defendants move to dismiss Count V because Plaintiffs do not allege that CMS was involved in any retaliatory conduct. The Court agrees. Plaintiffs allege that IDOT attempted to transfer them, terminated the Students with Disabilities Program, which resulted in Plaintiffs losing their positions, and continued to refuse to hire them or allow them to continue working in another employment capacity, all in retaliation for their requests for reasonable accommodations and for filing a charge of discrimination with the EEOC. First Am. Compl. ¶¶ 93-98.

Missing are any facts that plausibly suggest that CMS retaliated against Plaintiffs. Therefore, Count V is dismissed without prejudice as to CMS with leave to replead.

Defendants also challenge Plaintiffs' assertion that IDOT retaliated against them by not permitting them to continue working in another capacity. Defendants argue that the ADA requires reassignment only when an employee cannot perform the essential functions of his current position. Finally, Defendants argue that Plaintiffs admit that they were not full-time employees, and the ADA does not require employers to convert temporary jobs into permanent jobs. However, these issues are better resolved on a motion for summary judgment. Plaintiffs specifically allege that IDOT retaliated against them by attempting to place them in an isolated workspace, terminating the Students with Disabilities program, and failing to hire or otherwise allow Plaintiffs to continue to work in another employment capacity. First Am. Compl. ¶¶ 95, 96, 98. The Court finds that Count V states a claim for relief against IDOT.

**6.**   **The Court Will Not Strike Plaintiffs' Requests For Relief**

Plaintiffs seek various forms of relief in their First Amended Complaint.  Defendants challenge portions of Plaintiffs' claims for relief.

Defendants first argue that Plaintiffs lack standing to request injunctive relief on behalf of anyone other than themselves, and that the ADA does not require employers to create policies and protocols that would apply only to specifically named individuals.

Injunctive relief is an available remedy under the ADA.  <u>See</u> 42 U.S.C. §12117(a) (incorporating the remedies in the Civil Rights Act of 1964, including 42 U.S.C. § 2000e-5, which provides for injunctive relief).  The Court has wide discretion when fashioning a remedy for unlawful discrimination.  <u>U.S. E.E.O.C. v. Gurnee Inn Corp.</u>, 914 F.2d 815, 817 (7th Cir. 1990).

The Court previously addressed standing and determined that Plaintiffs have standing to seek injunctive relief.  The Court will not decide on a motion to dismiss whether the request that Defendants be ordered to create and adhere to a reasonable accommodation policy and protocol is appropriate.  Should

Plaintiffs succeed on their claims, the Court will address the appropriate remedy at that time.

Defendants next argue that the ADA does not require an employer to accommodate a disabled employee by promoting him to a higher-level position or trump an employer's seniority system. According to Defendants, Plaintiffs' complaint makes it clear that the full-time employment of Plaintiffs would affect collective bargaining agreements and seniority systems because AFSCME required that their desired positions be classified as a lower-ranked title before AFSCME would agree to waive bidding rights. Defendants further argue that the complaint does not allege any existing vacancies or any vacancies that do not implicate seniority rights.

Plaintiffs respond that these are factual issues for discovery. The Court agrees. If Plaintiffs succeed on their claims, the Court will consider the appropriate remedy for the unlawful discrimination. Moreover, Plaintiffs are not requesting a promotion or reassignment but are seeking placement in the position to which they believe they are entitled. See 42 U.S.C. § 12117(a) (incorporating § 2000e-5); 42 U.S.C. § 2000e-5(g) (providing that if

the court finds that the respondent has intentionally engaged in an unlawful employment practice, the court may order "reinstatement or hiring of employees").

Finally, Defendants argue that Plaintiffs are not entitled to monetary damages relating to positions for which they never applied, when they do not claim any barriers to submitting applications or that any unlawful conduct by Defendants prevented them from submitting applications. For the reasons stated above, the Court finds that Plaintiffs have plausibly alleged that it would have been futile to apply for the positions. Therefore, the Court will not strike Plaintiffs' request for monetary damages at this time.

## V. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (d/e 17) is GRANTED IN PART and DENIED IN PART. Count V is dismissed as to Defendant CMS without prejudice and with leave to replead. The Motion is otherwise denied. Plaintiffs are granted leave to file a Second Amended Complaint on or before April 23, 2018. Defendants shall thereafter answer or otherwise respond on or before May 7, 2018.

**ENTERED:  April 10, 2018**

**FOR THE COURT:**

_s/Sue E. Myerscough_

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**